IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICHARD L. CAIN,

             Plaintiff,

v.                          //    CIVIL ACTION NO. 1:11CV111
                                   (Judge Keeley)

XTO ENERGY INC., a Delaware
Corporation registered to do
business in West Virginia, and
WACO OIL & GAS CO., INC., a
West Virginia Corporation,

             Defendants.


MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 17] AND GRANTING MOTION TO DISMISS [DKT. NO. 8]

     The question before the Court is whether the sole nondiverse

defendant in this civil action, Waco Oil & Gas Co., Inc. ("Waco"),

was fraudulently joined by the plaintiff. If Waco was fraudulently

joined, the Court could exercise subject matter jurisdiction over

this case pursuant to 28 U.S.C. § 1332. If, however, Waco was not

fraudulently joined, the Court must remand the case to state court

for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

For the reasons that follow, the Court concludes that Waco was

fraudulently joined. Consequently, it **DENIES** the plaintiff's Motion

to Remand (dkt. no. 17) and **GRANTS** Waco's Motion to Dismiss (dkt.

no. 8).

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.[1]

The dispute in this case involves what are permissible oil and gas surface operations on a leasehold where the title to the surface has been severed from the underlying oil and gas estate. The plaintiff, Richard L. Cain ("Cain"), is the owner of the surface rights to certain land situated in Marion County, West Virginia. He seeks declaratory and injunctive relief to bar the lessee of oil and gas rights in the land, defendant XTO Energy ("XTO"), and the lessor and owner of those oil and gas rights, defendant Waco, from using the surface of his tract to explore for or produce oil and gas from any neighboring oil and gas estates.

As reflected in a deed executed in 1881, the land in question was originally a 138.05 acre tract of combined surface and mineral rights possessed by at least three concurrent owners. In 1907, via three separate deeds, the holders of the original 1881 deed conveyed the entire tract to a single owner, Austin Q. Fortney. Each of the deeds to Fortney reserved from the conveyance "all of the oil and gas within and underlying said tract of land aforesaid, as well as all rights and privileges necessary and convenient for

---

[1] The following facts are drawn from the "entire record" and stated in a light most favorable to the plaintiff. <u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999).

the mining and removal of said oil and gas, or either of them."
(Dkt. No. 6-1 at 8). It is undisputed that Cain purchased 105.34
acres of the original tract, subject to this reservation of oil and
gas rights, in 1989. The ownership history of the oil and gas
rights themselves, however, is somewhat more convoluted.

On April 6, 1999, approximately ten years after Cain bought
his 105.34 acre tract, Trio Petroleum Corp. ("Trio"), Waco's
predecessor, purchased 11/12's of the oil and gas rights to the
original 138.05 acre tract. (Dkt. No. 6-1 at 9). Trio promptly
executed a gas lease to itself as lessee on April 27, 1999, which
contained the following language:

> [T]he said Lessors . . . do grant, demise, lease and let,
> with covenants of quiet possession, and that they have
> the sole right so to grant and demise, unto the said
> Lessee, its successors and assigns, for the purpose of
> mining and operating for oil, gas, and casinghead gas,
> and of building tanks, stations, power plants, water
> stations and structures thereon to take care of the said
> products, and of laying pipelines on, over and across the
> leased premises and other lands of Lessors, for the
> purpose of conveying oil, gas, casinghead gas, steam, or
> water therein from and to wells and pipe lines on the
> premises and on adjoining and adjacent farms, and rights
> of way for road ways over this and other land of Lessors,
> all that certain land situate in the Lincoln District of
> Marion County and state of West Virginia . . . containing
> 138.05 acres.

(Dkt. No. 19-1 at 29).

<u>MEMORANDUM OPINION AND ORDER</u>

At some point during the next several years, Trio merged into Waco, with Waco as the sole surviving entity. Subsequently, in a deed effective September 1, 2003, Waco conveyed an undivided 1/3 interest in the 138.05 acre tract to Linn Energy Holdings, L.L.C., a West Virginia limited liability company. (Dkt. No. 17-3 at 1). In a separate contract effective that same day, Waco also assigned the majority of its oil and gas leases to Linn Energy, L.L.C., a Delaware limited liability company. (Dkt. No. 9-1 at 1). One of the Linn companies, presumably Linn Energy, L.L.C., then assigned the oil & gas lease for the original 138.05 acre tract to XTO.[2] (Dkt. No. 25 at 5).

On November 14, 2008, Waco, identified as the "Lessor" and "owner of all or part of that certain oil and gas estate described as containing 138.05 acres," executed a modification of the April 27, 1999 lease from Trio to Trio. (Dkt. No. 17-4 at 1). This modification authorized XTO, identified in the document as "lessee," to

_____

[2] The parties do not dispute that XTO received its rights from a Linn limited liability company, although documentation of this transfer has not been identified on the record. Notably, although the parties do not differentiate between the Linn companies, the various contracts and deeds in this case appear to describe two separate entities, e.g., one Linn company is identified as a Delaware company, and the other is identified as a West Virginia company.

> pool or unitize all or any part or parts of the leased
> premises or rights therein with any other land in the
> vicinity thereof, or with any leasehold, operating or
> other rights or interests to create units of such size
> and surface acreage as Lessee may desire, but containing
> no more than 640 acres plus 10% acreage tolerance.

(Dkt. No. 17-4 at 1).

Approximately two years later, in 2010, XTO first introduced itself to Cain as the tract's current oil and gas lessee. Cain and XTO proceeded to engage in a series of negotiations concerning proposed locations of well sites and various other property interests, with limited success. Notably, Cain sold XTO a multiple pipeline right-of-way and easement, granting XTO the right to transport oil, gas, water, and other substances over Cain's property. (Dkt. No. 9-2 at 3-7). The parties could not agree, however, whether XTO possessed the right to drill certain horizontal wells on Cain's surface, i.e., wells that would utilize Cain's surface but bore horizontally, beyond the borders of the original 138.05 acre tract, in order to extract oil and gas from a shared pool of oil and gas estates.

In late 2010, XTO applied for three well work permits in order to drill horizontal wells on Cain's land. (Dkt. No. 6-1 at 11-12); see also W. Va. Code § 22-6-8. The applications reflect that Waco was the owner or lessor of two of the five oil and gas estates to

be accessed by the proposed wells. (Dkt. No. 6-1 at 23). Upon receipt of XTO's well permit applications, Cain informed XTO by letter that "you do not have permission to enter this property for the purpose of the development of [the horizontal wells]. . . . [Y]ou do not have permission to drill, explore, develop, transport, or in any way use my surface rights (containing 105.34 acres) to obtain minerals from any neighboring mineral tracs [sic]." (Dkt. No. 6-1 at 14). In response, XTO advised Cain that it believed its proposed actions to be "perfectly legal." (Dkt. No. 6-1 at 15). As XTO proceeded to prepare the property for its horizontal drilling operations, Cain filed the instant suit for declaratory and injunctive relief.

## II.

### A.

Cain filed a complaint against XTO and Waco in the Circuit Court of Marion County on June 21, 2011, seeking the following declarations:

> A. Declare that the Defendant XTO does not have the right to come onto the surface of Plaintiff Richard Cain's tract of land for any purpose related to the exploration for or production of oil or gas from tracts of oil and gas rights that were not part of his land at the time of the severance of the oil and gas rights from his land, including not drilling well bores from his surface horizontally into the neighboring oil and gas tracts, not using his surface to inject water or other fluids into

neighboring tracts in order to frac their formations, not producing the gas from neighboring oil and gas tracts through a well bore surfacing his land, not piping gas from neighboring oil and gas tracts through a well bore surfacing on his land, not piping gas from neighboring oil and gas tracts across his surface either from a well on neighboring tracts or from a well bore that surfaces on the surface of his land, not making or using roads for that purpose, or not using the surface of his any [sic] in any other way for that purpose.

B. Declare that Defendant Waco does not have the right to lease or otherwise assign or convey, by a pooling or unitization clause or any other provision, the rights to use the surface of Richard Cain's tract of land for exploring for or producing oil or gas from neighboring oil and gas tracts that were not part of the tract of land at the time of the severance – unless the severance document specifically stated that the surface could be used for that purpose, and the deeds in this case did not so state.

(Dkt. No. 6-1 at 17-18). The complaint further requests a temporary and permanent injunction "enjoin[ing] the Defendants from entering onto the surface of the Plaintiff's land for any purpose relating to the exploration for and production of oil and gas from tracts of land that did not underlie the tract of land in question at the time of the severance." (Dkt. No. 6-1 at 18).

The defendants timely removed this civil action under 28 U.S.C. §§ 1441 and 1446 on July 22, 2011, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The defendants argue that the Court has subject matter jurisdiction over this case because complete diversity exists between the plaintiff, a resident

of West Virginia, and XTO, a Delaware corporation. The defendants contend that the citizenship of Waco, a West Virginia corporation, is irrelevant to the jurisdictional analysis because it was fraudulently joined in the state action and has no real interest in this suit. On this theory, Waco moved to dismiss itself shortly after removal. (Dkt. No. 8). Cain, however, maintains that Waco is a proper party and, on August 18, 2011, moved to remand this case to state court on the ground that Waco's presence necessarily destroys this Court's diversity jurisdiction. (Dkt. No. 17).

**B.**

The Court took up the pending motions in this case at a hearing held on September 30, 2011. During oral argument, counsel for Waco disclosed to the Court and parties that, subsequent to the removal of this action, Waco had sold the entirety of its interests in the oil and gas estate underlying Cain's tract to XTO.[3] The plaintiff then moved to file an additional brief addressing this recent development and clarifying his claims against Waco. Without objection from the defendants, the Court granted the oral motion

---

[3] Counsel for Waco explained that this sale had been in negotiation since November 2010, well before the filing of the instant suit. All parties agreed that the sale, which culminated in a special warranty deed dated August 29, 2011, was not taken in bad faith. (Dkt. No. 38-1).

and set a supplementary briefing schedule, (dkt. no. 35), which the parties have since completed. The Court now turns to the plaintiff's motion to remand,[4] which is ripe for review.

### III.

A party may remove to federal court any state "civil action[] where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. §§ 1332(a), 1441(a). Although the complete diversity requirement of § 1332(a) is only satisfied where the lawsuit contains "no plaintiff and no defendant who are citizens of the same state," Wis. Dep't of Corrs. v. Schacht, 524 U.S. 381, 388 (1998), a defendant may nevertheless remove a minimally diverse case if he can demonstrate that all nondiverse defendants were fraudulently joined in the state action. Mayes, 198 F.3d at 461; see also Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) (holding that the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). The district court will then "disregard, for

---

[4] Fraudulent joinder is a jurisdictional inquiry, see Mayes, 198 at 460, that ordinarily should be addressed prior to consideration of any Fed. R. Civ. P. 12(6) motions to dismiss. Accordingly, the Court considers the arguments presented in Waco's motion to dismiss only to the extent that they otherwise inform the fraudulent joinder analysis.

jurisdictional purposes, the citizenship of nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes, 198 F.3d at 461.

A removing party who bases diversity jurisdiction on the doctrine of fraudulent joinder must establish either "'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). The burden on the party invoking this doctrine is heavy: "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Marshall, 6 F.3d at 232-33 (citation omitted). This standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)," Hartley, 187 F.3d at 424, as the plaintiff need only have "a possibility of a right to relief" against the nondiverse defendant in order to defeat removal. Marshall, 6 F.3d at 233 (emphasis added) (citation omitted). "Once the court identifies this glimmer of hope for the

plaintiff, the jurisdictional inquiry ends." <u>Hartley</u>, 187 F.3d at 426.

In evaluating a claim of fraudulent joinder, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" <u>Mayes</u>, 198 F.3d at 464 (quoting <u>AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.</u>, 903 F.2d 1000, 1003 (4th Cir. 1990)). The "starting point" of the Court's analysis, however, remains "the allegations of the complaint[] itself." <u>White v. Chase Bank USA, NA.</u>, No. 2:08-1370, 2009 WL 2762060, at *2 (S.D. W. Va. Aug. 26, 2009); <u>see also</u> <u>Pacheco de Perez v. AT&T Co.</u>, 139 F.3d 1368, 1380 (11th Cir. 1998) ("The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleading at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." (citation omitted)). As such, the Court may reject post-removal filings "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 700 (5th Cir. 1999) (citation omitted); <u>see also</u> <u>Kahle v. Chesapeake Energy Corp.</u>, No. 5:11-cv-24, 2011 WL 2182112, at *4 (N.D. W. Va. June 3, 2011); <u>Justice v. Branch</u>

<u>**MEMORANDUM OPINION AND ORDER**</u>

<u>Banking and Trust Co.</u>, No. 2:08-230, 2009 WL 853993, at *1 n.2
(S.D. W. Va. Mar. 24, 2009).

**IV.**

Here, the defendants have not alleged that there is outright
fraud in the plaintiff's recitation of jurisdictional facts. Thus,
the Court's fraudulent joinder inquiry is limited to whether Cain
could conceivably maintain a cause of action against Waco in state
court.

**A.**

As an initial matter, the Court must determine what impact, if
any, Waco's post-removal sale of assets has on the fraudulent
joinder analysis. Cain urges the Court to discount this evidence
and confine its review to "the facts at the time of removal." (Dkt.
No. 40 at 3). Although acknowledging that "removal is determined at
the time of the transfer," XTO nevertheless maintains that the
Court may "look past the pleadings" when addressing fraudulent
joinder and permissibly consider the impact of the sale. (Dkt. No.
38 at 4).

District courts in the Fourth Circuit analyze fraudulent
joinder based on "'the entire record'" and "'by any means
available.'" <u>Mayes</u>, 198 F.3d at 464 (quoting <u>AIDS Counseling</u>, 903
F.2d at 1003). Although the scope of the Court's jurisdictional

review in these cases is consequently quite broad, the defendants did not identify, and the Court was unable to find, any authority for the proposition that this standard vitiates the otherwise well-established rule that a district court must "determine[] the existence of diversity jurisdiction at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy." Porsche Cars N. Am., Inc. v. Porsche.net, 302 F.3d 248, 255-56 (4th Cir. 2002) (citation and internal quotations marks omitted); see also Freeport v. McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (discussing "well-established rule that diversity of citizenship is assessed at the time the action is filed").

Rather, as discussed briefly above, courts undertaking the fraudulent joinder analysis generally consider post-removal evidentiary submissions only to the limited extent that they shed light on the facts and allegations as they existed prior to removal. See, e.g., Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 265 (5th Cir. 1995) (differentiating between submissions which "clarify the jurisdictional facts at the time of removal" and those that "amend away the basis for federal jurisdiction"); see generally Kahle, 2011 WL 2182112, at *4.

As the Supreme Court of the United States recently noted, federal jurisprudence "measures all challenges to subject matter jurisdiction premised on diversity of citizenship against the state of facts that existed at the time of filing." Gupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). Whether or not Waco's sale does in fact nullify an otherwise viable claim would be a matter for the state court on remand. The question before this Court is restricted to whether, based on the facts that existed at the time of removal as otherwise "clarif[ied]" or "amplif[ied]" by the current record, Griggs, 181 F.3d at 700, the defendants have established that "'there is no possibility'" that Cain has alleged a tenable claim against Waco under West Virginia law. Hartley, 187 F.3d at 424 (quoting Marshall, 6 F.3d at 232).

**B.**

The plaintiff advances two separate theories by which he claims to be able to recover against Waco: (1) "The Complaint seeks a declaration of rights as to Waco under the relevant deed. . . . for Waco's own acts: purporting to own and lease valuable rights that belong to Mr. Cain alone." (Dkt. No. 26 at 4, 6); (2) "This is an action for trespass against both XTO and Waco. . . . Waco [could] be held liable for authorizing, ratifying and/or profiting

from the trespass of its mineral lessee." (Dkt. No. 37 at 3, 1).
The Court will address each of these arguments in turn.

## 1.

The plaintiff asks the Court to declare that, in the absence
of express language to the contrary in the original severance
lease, Waco "does not have the right to lease or otherwise assign
or convey . . . the rights to use the surface of Richard Cain's
tract of land for exploring for or producing oil or gas from
neighboring oil and gas tracts that were not part of the tract of
land at the time of the severance." (Dkt. No. 6-1 at 17). As this
claim seeks a "declar[ation] [of] rights, status, and other legal
relations" pursuant to a deed, it falls within the ambit of the
West Virginia Uniform Declaratory Judgments Act ("UDJA"), W. Va.
Code §§ 55-13-1, et seq.[5]

---

[5] XTO argues that the federal declaratory judgment act, 28 U.S.C. § 2201,
is the appropriate framework for the plaintiff's claims. See Herbalife
Intern., Inc. v. St. Paul Fire and Marine Ins. Co., No. 5:05-cv-41, 2006
WL 839515, at *3-4 (N.D. W. Va. March 30, 2006) (analyzing fraudulent
joinder under the federal declaratory judgment act). However, the
fraudulent joinder inquiry is focused on whether the plaintiff is able
to establish a cause of action against the nondiverse defendant "in state
court." Marshall, 6 F.3d at 232 (emphasis added); see Grenell v. Western
S. Life Ins. Co., 298 F. Supp. 2d 390, 397 n.9 (S.D. W. Va. 2004)
("[F]raudulent joinder analyses seek resolution of whether a plaintiff's
claim could prevail as it was filed in the state court from which it was
removed. Thus, examinations of joinder of parties should probably proceed
with reference to state procedural law."); City of Portsmouth, Virginia
v. Buro Happold Consulting Eng., P.C., No. 2:05-341, 2005 WL 2009281, at
*6 n.4 (E.D. Va. Aug. 19, 2005) ("The majority of courts have found that

MEMORANDUM OPINION AND ORDER

Before a court can grant declaratory relief pursuant to the provisions of the UDJA, "there must be an actual, existing controversy" between adverse parties. <u>Hustead on Behalf of Adkins v. Ashland Oil, Inc.</u>, 475 S.E.2d 55, 61 (W. Va. 1996). Plaintiffs must identify such a controversy in order "demonstrate they have standing to obtain the relief requested," <u>Shobe v. Latimer</u>, 253 S.E.2d 54, 58 (W. Va. 1979), as courts are permitted to "consider and declare the rights of litigants only in relation to [those] actual controversies" which are amenable to judicial resolution. <u>Chesapeake & Potomac Tel. Co. v. City of Morgantown</u>, 107 S.E.2d 489, 497 (W. Va. 1959). An actual, justiciable controversy exists where "a legal right is claimed by one party and denied by another." <u>Dolan v. Hardman</u>, 29 S.E.2d 8, 10 (W. Va. 1944). In determining the sufficiency of a justiciable controversy, state courts consider four factors:

---

state procedural law governs the matter."). In accordance with the majority of district courts in this circuit, the Court will look to whether the plaintiff would be able to establish a possible claim under the state declaratory judgment act. <u>See</u> <u>Lexcorp v. Western Word Ins. Co.</u>, No. 4:10-00027, 2010 WL 3855305, at *5 (W.D. Va. Oct. 1, 2010) (applying Virginia declaratory judgment act when analyzing fraudulent joinder); <u>Ohio Cas. Ins. Co. v. RLI Ins. Co.</u>, No. 1:04-cv-483, 2005 WL 2574150, at *5 (M.D.N.C. October 12, 2005) (applying North Carolina declaratory judgment act when analyzing fraudulent joinder); <u>American Intern. Ins. Co. v. Heltzer</u>, No. AW-00-335, 2001 WL 225031, at *2 (D. Md. Feb. 7, 2001) (applying Maryland declaratory judgment act when analyzing fraudulent joinder).

    (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts; (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest.

Syl. Pt. 4, Hustead, 475 S.E.2d 55. Notably, the existence of a justiciable controversy "depends upon the facts existing at the time the proceeding is commenced" and may not rest on any "future, contingent event[s]" or abstract questions. Town of South Charleston v. Bd. of Ed. of Kanawha Cnty., 50 S.E.2d 880, 883 (W. Va. 1948); see also Farley v. Graney, 119 S.E.2d 833, 838 (W. Va. 1960).

    The defendants argue that there is no actual, justiciable controversy between Waco and the plaintiff because Waco has not, and does not intend to, "lease or otherwise assign or convey . . . the rights to use the surface of Richard Cain's tract of land for exploring for or producing oil or gas from neighboring oil and gas tracts." (Dkt. No. 6-1 at 17). Cain, however, contends that XTO's identification of the April 27, 1999 lease from Trio to Trio in its well permit application (dkt. no. 6-1 at 23) gives rise to the necessary inference that Waco purports to own and lease surface rights which belong exclusively to Cain.

Even construing all applicable facts and law in the plaintiff's favor, <u>Marshall</u>, 6 F.3d at 232-33, his declaratory judgment claim against Waco fails. Critically, Cain cannot establish the requisite "adverseness" between himself and Waco that would render declaratory relief appropriate. Syl. Pt. 4, <u>Hustead</u>, 475 S.E.2d 55. Cain argues, in essence, that he is the only party who owns the "legal right" to lease his surface for use in producing oil and gas from adjoining tracts. As the defendants have demonstrated, however, Waco does not "deny" him this right, nor is there any indication on the record that it otherwise purports to own or convey this right. <u>Dolan</u>, 29 S.E. 2d at 10; <u>see also</u> <u>Trail v. Hawley</u>, 259 S.E.2d 423, 425 (W. Va. 1979) ("Simply stated, for the purposes of a declaratory judgment action, a justiciable controversy exists when a legal right is claimed by one party and denied by another.").

As a threshold matter, XTO listed the April 27, 1999 lease from Trio to Trio on its well permit application pursuant to the statutory directive that it "identif[y] . . . all parties to all leases or other continuing contractual agreements by which the right to extract, produce or market the <u>oil or gas</u> is claimed" as well as "[t]he book and page simply wherein each such lease or contract by which the right to extract, produce or market the <u>oil</u>

18

or gas is recorded." W. Va. Code § 22-6-8(c) (emphasis added).
Contrary to Cain's assertions, there is simply no indication that
a lessor identified pursuant to this statute would have provided
the applicant with anything more than the bare right to "extract,
produce, or market" its own oil and gas; neither the statutory
provision nor the permit application itself contain any relevant
discussion of surface rights. Accordingly, as no legitimate
inference of culpability can be drawn from the application itself,
the Court will look to the substantive provisions of the lease
assigned to XTO.

The extent of the relevant surface rights expressly granted by
the original lease, the April 27, 1999 agreement from Trio to Trio,
was the right to "lay[] pipelines on, over, and across the leased
premises . . . for the purpose of conveying oil, gas, casinghead
gas, steam or water . . . from and to wells and pipelines on the
premises and on adjoining on adjacent farms." (Dkt. No. 6-1 at 9-
10) (emphasis added). This clause gives lessees the right to access
adjoining property from the leased premises via pipelines,[6] see

_____

[6] As the defendants note, the plaintiff does not object to XTO's
placement of pipelines on his tract, nor would he be entitled to;
he specifically granted XTO an independent right-of-way and
easement to lay multiple pipelines on his surface. (Dkt. No. 9-2 at
3-7).

generally <u>Flanagan v. Stalnaker</u>, 607 S.E.2d 765, 771 (W. Va. 2004)
(discussing identical provision), but does not otherwise provide
the right to use the surface of the tract to explore for or produce
oil and gas from neighboring oil and gas estates. Accordingly, the
original lease, by its own terms, cannot be construed as a grant of
the disputed surface rights at issue in this case.

The modification of the original lease, which was executed
between Waco and XTO on November 14, 2008, similarly fails to
implicate any of the surface rights now in dispute. This contract
contains no reference to any surface rights. <u>See</u> (Dkt. No. 17-4 at
1-3). It simply authorizes XTO, without any further participation
by Waco, to pool or unitize the 138.05 acre oil and gas estate with
other proximate oil and gas estates. Notably, as owner and lessor
of the oil and gas in place, Waco was legally entitled to permit
its lessee to "consolidate[] . . . the contractual interests under
the leases" in this fashion. <u>Bogess v. Milam</u>, 34 S.E.2d 267, 270
(W. Va. 1945); <u>see also</u>  Larry L. Skeen, <u>West Virginia Oil and Gas
Law</u>, § 2.7 (1984). Such contracts, which are relatively common for
lessees or operators who plan to drill shallow wells not affected
by West Virginia's "mandatory" pooling statutes, provide lessees
with the discretion to voluntarily pool or unitize their respective
oil and gas interests in order to streamline production costs. <u>See</u>,

**MEMORANDUM OPINION AND ORDER**

e.g., <u>Croston, v. Emax Oil Co.</u>, 464 S.E.2d 728, 735 (W. Va. 1995)

(finding no affirmative duty to pool); <u>see also</u> (Dkt. No. 17-4

("[XTO] is hereby given the right <u>at its option</u>, at any time from

the date hereof . . . to pool or unitize all or any part or parts

of the leased premises or rights therein. . . . with any other

leasehold." (emphasis added)). Here, there is no indication that

this modification agreement conveyed anything more than a right

Waco indisputably held, i.e., the right to permit pooling and

unitization of its own property. As the defendants rightfully

emphasize, there is no basis in fact or law for reading a specific

grant of surface rights into such a limited contract.[7]

---

[7] The plaintiff argues that Waco should be held liable because it
likely <u>believed</u> that granting XTO permission to unitize the lease
would, under the common law of West Virginia, give rise to an
implied right to use Cain's surface for horizontal drilling. <u>See
generally</u> <u>Miller v. N.R.M. Petroleum Corp.</u>, 570 F. Supp. 28, 30
(N.D. W. Va. 1983) (in the context of the implied right of an oil
and gas lessee to make reasonably necessary use the surface, noting
that it "seems only reasonable" that a lessee producing from a
unitized pool should be able to use "the surface area of each tract
in a pool" to drill wells, "as long as the use is reasonably
necessary."). In the same breath, of course, the plaintiff also
contends that <u>Miller</u> was wrongly decided and that no such common
law right exists. In any event, the existence of an implied right
cannot be attributed to whichever party in the chain of title that
the plaintiff would choose; by its very nature, it arises by
operation of law. <u>See</u> <u>Phillips v. Fox</u>, 458 S.E.2d 327, 332 (W. Va.
1995) ("It is well-settled that ownership of a mineral estate
<u>includes</u> the right to enter upon and use the superjacent surface by
such manner and means as is fairly reasonable and necessary to
reach and remove the minerals." (emphasis added) (citing <u>Squires v.</u>

Finally, it is also worth noting that Cain seeks a declaration centered around an "uncertain and contingent event[] that may not occur at all." Syl. Pt. 4, <u>Hustead</u>, 475 S.E.2d 55. In the absence of any allegation that such a conveyance is even contemplated by Waco, he asks that the Court declare that Waco "does not have the right to lease or otherwise assign or convey" certain rights. (Dkt. No. 6-1 at 17). Such a declaration would be ineffective unless and until Waco decided to lease those specific rights, an event that "has not occurred" and certainly "may not occur." <u>Town of South Charleston</u>, 50 S.E.2d at 883. As it depends entirely on a dubious future contingency, such a request "affords no ground for [declaratory] relief." <u>Id.</u>

As there is no indication in the record of this case that Waco either conveyed or planned to convey "the rights to use the surface of Richard Cain's tract of land for exploring for or producing oil or gas from neighboring oil and gas tracts" (dkt. no. 6-1 at 12), Cain necessarily lacks an "actual controversy" with Waco that would entitle him to declaratory relief. <u>Chesapeake & Potomac Tel. Co.</u>, 107 S.E.2d at 497. Accordingly, the defendants have carried their "heavy burden" and conclusively established that "'there is no

<u>Lafferty</u>, 121 S.E. 90, 91 (W. Va. 1924)).

possibility'" that Cain would be entitled to a declaratory judgment
against Waco under West Virginia law. Hartley, 187 F.3d at 424
(quoting Marshall, 6 F.3d at 232).

## 2.

Subsequent to oral argument, Cain largely recharacterized his
claims against Waco. Although he admits that the word "trespass" is
not included in the complaint, Cain now contends that the gravamen
of his claim against Waco is for "authorizing, ratifying, and/or
profiting from the trespass of its mineral lessee," rendering it
liable as a joint trespasser for the equitable relief sought in the
complaint.[8] (Dkt. No. 37 at 1). The defendants' argument against
this claim is simple. First, they contend that it was not alleged
in the complaint and therefore cannot serve as a basis to divest
this Court of its jurisdiction. See Griggs, 181 F.3d at 700
("[p]ost-removal filings may not be considered [] when or to the
extent that they present new causes of action or theories not
raised in the controlling petition filed in state court"); see also

---

[8] As the Court has determined that the plaintiff's request for
declaratory relief against Waco is not viable, the sole remaining
claim directed at Waco is the request for injunctive relief. As the
plaintiff points out, however, state courts have found injunctive
relief available for trespass to real property where there is no
"practical or adequate remedy at law" for the intrusion. Allegheny
Del. Corp. Inc. v. Barati, 273 S.E.2d 384, 387 (W. Va. 1980).

MEMORANDUM OPINION AND ORDER

Kahle, 2011 WL 2182112, at *4 (rejecting a plaintiff's post-removal allegations of trespass against a fraudulently joined party). Second, they contend that the record is wholly devoid of any possible evidence that would indicate that Waco ever participated in, authorized, or ratified XTO's drilling activities.

**i.**

At the motions hearing in this matter, the Court specifically advised the parties that, in its view, the complaint fails to plead a cause of action for trespass. (Dkt. No. 34 at 23). The plaintiff, however, centered his supplemental briefing around the theory that the contents of his complaint give rise to "fair notice" that "unauthorized use of real property, also called trespass, is at issue" in the case, which satisfies the "notice pleading" standard under state law. (Dkt. No. 40 at 7).[9] Such an approach makes sense in regard to the claims against XTO. Compare (Dkt. No. 6-1 at 15, 16 ("Cain went to see his land and a bulldozer was cutting a bench

---

[9] See Systems2 Commc'ns Inc. v. Comcast Corp., No. 7:10-cv-00501, 2011 WL 335254, at *3 (W.D. Va. Jan. 27, 2011) ("State pleading requirements are the pleading requirements applicable in the review of motions to remand." (citation omitted)); see also MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009) ("[C]ourts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." (citations omitted)).

for the first well site. . . . Defendant XTO does not have the right to come onto the surface of Richard Cain's tract of land . . .")), with Hark v. Mountain Fork Lumber Co., 34 S.E.2d 348, 352 (W. Va. 1945) ("Trespass is defined as . . . an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property."). However, the plaintiff cannot similarly remold its allegations against Waco. The portions of the complaint that are directed against this defendant simply allege that it conveyed rights that it didn't own, a contention which, as discussed above, the Court has rejected as wholly without merit.

To the extent that the plaintiff also tries to read new import into documents attached to his complaint, e.g. the royalty provisions of the well permit, the Court will simply note that even under liberal notice pleading a plaintiff "may not fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint." State ex rel. McGraw v. Scott Runyan Pontiac-Buik, Inc., 461 S.E.2d 516, 522 (W. Va. 1995) (quoting Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1430 (W. Va. 1995)). As the complaint fails to state a claim for cotrespasser liability against Waco in terms that are "intelligibly sufficient" such that "a circuit court or an opposing party [could] understand

whether a valid claim is alleged and . . . what it is," <u>Roth v. DeFeliceCare, Inc.</u>, 700 S.E.2d 183, 189 (W. Va. 2010), the Court agrees with the defendants that the plaintiff's purported lessor trespass claim is essentially a "new cause[] of action or theor[y]" that is inappropriately raised at this juncture. <u>Griggs</u>, 181 F.3d at 700.

### ii.

Even assuming that the complaint did adequately plead a cause of action for lessor trespass liability, the defendants have nonetheless established that, "even after resolving all issues of fact and law in the plaintiff's favor," <u>Marshall</u>, 6 F.3d at 232-33 (citation omitted), there is "'no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" <u>Hartley</u>, 187 F.3d at 424 (quoting <u>Marshall</u>, 6 F.3d at 232).

To constitute a trespass under West Virginia law, "the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property." <u>Rhodes v. E.I. du Pont de Nemours & Co.</u>, 636 F.3d 88, 96 (4th Cir. 2011) (citing <u>Hark</u>, 34 S.E.2d at 352); <u>see also</u> <u>Marfork Coal Co. v. Smith</u>, No. 5:10-cv-69, 2010 WL 742560, at *4 (S.D. W. Va. Feb. 26, 2010)

("Generally, a trespass consists of an intentional invasion of the property of another."). Although a lessor of oil and gas rights generally "parts with every vestige of control over the actual production of oil and gas in the property he leases," <u>Cole v. Pond Fork Oil & Gas Co.</u>, 35 S.E.2d 25, 29 (W. Va. 1945), state courts have utilized a "common purpose theory" of liability to find mineral lessors jointly accountable for the trespasses of their lessees in certain circumstances, e.g., where the lessor "had knowledge of or acquiesced in its lessees' trespass." <u>Reynolds v. Pardee & Curtain Lumber Co.</u>, 310 S.E.2d 870, 876 (W. Va. 1983) (citations omitted); <u>see also</u> <u>O'Dell v. McKenzie</u>, 145 S.E.2d 388, 391 (W. Va. 1965); Syl. Pt. 2, <u>Flanagan v. Gregory & Poole, Inc.</u>, 67 S.E.2d 865 (W. Va. 1951).

Cain argues that Waco could be held liable for XTO's trespass because it "authorized (through the lease/modification) and ratified (or will ratify through acceptance of royalties) XTO's unlawful acts." (Dkt. No. 37 at 11). As described above, however, the mere existence of the lease and modification in this case cannot evince authorization or even knowledge of XTO's wholly independent decision to place horizontal wells on the plaintiff's

27

property.[10] Moreover, there is no basis for finding that Waco could have possibly "ratified" or "sanctioned" XTOs actions by acceptance of royalties when, at the time of removal, no such wells had been drilled and no such royalties had been made or accepted. At bottom, the record in this case simply does not comport with the plaintiff's new theory. As such, the Court finds no "glimmer of hope" that Cain could establish a cause of action against Waco in state court, <u>Hartley</u>, 187 F.3d at 426, and **DENIES** the plaintiff's motion to remand (dkt. no. 17).

### V.

In conclusion, for the reasons discussed, the Court **DENIES** the plaintiff's motion to remand (dkt. no. 17), **GRANTS** Waco's motion to dismiss (dkt. no. 8), and retains jurisdiction over this case. The Court further **DIRECTS** the remaining parties to jointly file a revised Fed. R. Civ. P. 26(f) report by **April 13, 2012.** Upon receipt of the proposed discovery plan, this Court **WILL CONDUCT** a scheduling conference by telephone on **Friday, April 20, 2012** at

---

[10] The Court notes that Waco's counsel, as late as August 29, 2011, had no knowledge that any wells had actually been drilled on the plaintiff's property – Waco, in fact, erroneously argued in its motion to dismiss that production had not yet begun, an argument which it later retracted upon conferring with counsel for XTO. (Dkt. No. 22).

**2:30 P.M.** The Court directs lead counsel for the plaintiff to arrange the conference call and provide dial-in information to all parties and the Court.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: March 29, 2012.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE